## CTB VENTURES 55, INC. *v.* CHARLES RUBENSTEIN ET AL.
### (14193)

Landau, Schaller and Hennessy, Js.

---

Argued September 20—decision released November 14, 1995

*Richard P. Weinstein,* with whom, on the brief, was *Peter B. Rustin,* for the appellant (named defendant).

*Thomas A. Kaelin,* with whom, on the brief, was *John R. Horvack,* for the appellee (plaintiff).

SCHALLER, J. The named defendant, Charles Rubenstein,[1] appeals from a deficiency judgment rendered against him. The defendant claims that the trial court improperly (1) allowed the plaintiff to offer in the deficiency hearing an expert witness who had not been disclosed to the defendant pursuant to Practice Book § 220 (D), (2) denied the defendant a jury trial for the deficiency hearing, (3) found that the plaintiff

---

[1] Other defendants in the action include the original mortgagors and subsequent lienholders. We will refer in this opinion to Charles Rubenstein as the defendant.

presented sufficient evidence to justify a deficiency judgment, (4) awarded the plaintiff damages pursuant to a prepayment clause in the mortgage note, (5) permitted the plaintiff to present additional evidence after the close of its case, and (6) admitted microfiche copies of checks into evidence. We affirm the judgment of the trial court.

The following facts are relevant to this appeal. In September, 1988, the defendant assumed a promissory note secured by a mortgage deed, a conditional assignment of leases and rentals, a security agreement, and a UCC-1 financing statement, all of which had been executed to Connecticut Savings Bank (CSB). In November, 1991, Centerbank acquired the right, title and interest of CSB in the note and security instruments. On May 6, 1992, Centerbank commenced a foreclosure action against the defendant alleging that the defendant had defaulted on his obligation to the bank. On June 5, 1992, Centerbank filed a request for disclosure of defense. On July 6, 1992, the trial court entered a default for failure to disclose a defense against the defendant. By motion filed October 15, 1992, CTB Ventures 55, Inc. (CTB), was substituted as the plaintiff in the foreclosure action.

On November 16, 1992, the trial court rendered a judgment of strict foreclosure against the defendant. The court found a debt of $911,948.01, which represented $773,073.89 of principal on the note, $100,220.43 of accrued interest, and a $38,653.69 prepayment fee. The court also awarded attorney's fees of $3200, title search fees of $150 and appraiser's fees of $2500. The defendant did not redeem on his law day, and title to the mortgaged property, condominium units 201, 203, 204 and 205 at 60 Washington Street, Hamden, vested in CTB on January 28, 1993.

On February 11, 1993, CTB moved for a deficiency judgment pursuant to General Statutes § 49-14. On Feb-

ruary 18, 1993, the defendant filed a claim for a jury trial. On June 24, 1993, the trial court held a deficiency hearing and found the value of the property on the date that title vested in CTB to be $720,000. On November 7, 1994, the court took additional evidence and found the total debt as of the day title vested in CTB to be $1,005,524.10, including the principal, interest, attorney's fees, and appraisal fees that had been awarded at the time of the judgment of strict foreclosure, plus additional interest, attorney's fees, appraisal fees, and common charges and real estate taxes encumbering the property. This left a deficiency of $285,524.10. The court rendered a deficiency judgment against the defendant in that amount.

I

The defendant first claims that the trial court improperly allowed the plaintiff to offer, at the June 24, 1993 deficiency hearing, an expert witness who had not been disclosed to the defendant in accordance with Practice Book § 220 (D).[2] The defendant argues that a deficiency hearing is a trial for purposes of § 220 (D).[3] The defend-

---

[2] We initially note that, although the trial court questioned the reliability and rejected the conclusion as to fair market value of this expert witness, the trial court did not reject all of this expert witness' testimony. The expert witness' testimony covered preliminary matters that the trial court considered. We conclude, therefore, that the defendant was aggrieved by the trial court's decision to allow an expert witness who had not been disclosed in accordance with Practice Book § 220 (D) to testify. *Windham Taxpayers Assn.* v. *Board of Selectmen*, 234 Conn. 513, 523, 662 A.2d 1281 (1995) ("first, the party claiming aggrievement must demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest shared by the community as a whole; second, the party claiming aggrievement must establish that this specific personal and legal interest has been specially and injuriously affected by the decision").

[3] The defendant also argues that Practice Book § 528 requires the disclosure of an expert witness who may testify at a deficiency hearing. Practice Book § 528 provides in relevant part that "[w]henever a deficiency judgment is claimed in a foreclosure action, the party claiming such judgment shall file with the clerk of the court within the time limited by statute a written

ant further argues that to hold otherwise allows parties to practice trial by ambush in deficiency hearings. We find no merit to this claim.

The following additional facts are necessary for the resolution of this issue. On June 22, 1993, the defendant moved that the trial court preclude the appraisal testimony of Timothy J. Breda, a commercial real estate appraiser with the Jerry R. Adkins Company. The defendant claimed that the plaintiff failed to disclose Breda until June 14, 1993, despite the plaintiff's filing of a motion for deficiency judgment on February 17, 1993. At the June 24, 1993 deficiency hearing, the trial court denied the defendant's motion and allowed Breda to testify.

Practice Book § 220 (D) provides in relevant part that "[a]ny plaintiff expecting to call an expert witness at trial shall disclose the name of that expert, the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion, to all other parties within 60 days from the date the case is claimed to a trial list. . . . If disclosure of the name of any expert expected to testify at trial is not made in accordance with this subsection, or if an expert witness who is expected to testify is retained or specially employed after that date, such expert shall not testify except in the discretion of the court for good cause shown."

motion setting forth the facts relied on as the basis for the judgment . . . ." The plaintiff contends, however, that the defendant failed to raise this claim at the deficiency hearing. We examine the record to determine whether the defendant raised the issue in question at the deficiency hearing. *State* v. *Zollo*, 36 Conn. App. 718, 726, 654 A.2d A.2d 359, cert. denied, 234 Conn. 906, 660 A.2d 859 (1995). We decline to address the defendant's claim because Practice Book § 528 was not the basis for the defendant's motion to exclude testimony and was not raised in the trial court. See *Heritage Village Master Assn., Inc.* v. *Heritage Village Water Co.*, 30 Conn. App. 693, 703, 622 A.2d 578 (1993).

As we have recently stated, deficiency proceedings are statutory creations. See *Federal Deposit Ins. Corp.* v. *Voll*, 38 Conn. App. 198, 205, 660 A.2d 358 (1995). Connecticut enacted its first deficiency judgment statute in 1833. Id., citing *Farmers & Mechanics Savings Bank* v. *Durham Realty, Inc.*, 34 Conn. App. 204, 207, 640 A.2d 1017 (1994). In 1979, however, "[t]he statute was declared unconstitutional on the ground that the failure to provide for an evidentiary hearing violated due process. The legislature accordingly amended the statute to provide that the court hears evidence on the value of the property from both parties and establishes a conclusive valuation of the property." *Federal Deposit Ins. Corp.* v. *Voll*, supra, 209. General Statutes § 49-14 (a) now provides in relevant part that "[a]t any time within thirty days after the time limited for redemption has expired, any party to a mortgage foreclosure may file a motion seeking a deficiency judgment. Such motion shall be placed on the short calendar for an evidentiary hearing. . . ."

"Statutes are to be applied as their words direct. . . . [I]f the statutory language is clear and unambiguous, there is no room for construction." (Citation omitted; internal quotation marks omitted.) *River Rock & Pile, Inc.* v. *O & G Industries, Inc.*, 219 Conn. 787, 805, 595 A.2d 839 (1991). The plain language of § 49-14 clearly authorizes an "evidentiary hearing" as "the only available means of satisfying a mortgage debt when the security was inadequate to make the plaintiff whole. *New England Savings Bank* v. *Lopez*, [227 Conn. 270, 278 n.10, 630 A.2d 1010 (1993)], citing D. Caron, Connecticut Foreclosures (2d Ed. 1989) § 9.05A, p. 158." *Federal Deposit Ins. Corp.* v. *Voll*, supra, 38 Conn. App. 205–206. Practice Book § 220 (D), which applies only to trials, does not require the disclosure of expert witnesses who testify at deficiency hearings.[4]

[1] Compare *Connecticut Bank & Trust Co., N.A.* v. *Reckert*, 33 Conn. App. 702, 638 A.2d 44 (1994), in which this court applied Practice Book § 220 (D) to the trial of a foreclosure action.

## II

The defendant next argues that the trial court improperly refused to afford the defendant a jury trial for the deficiency proceeding. The record on appeal fails to disclose any ruling by the trial court on the defendant's February 18, 1993 claim for a jury trial. In fact, at the June 24, 1993 deficiency hearing, defendant's counsel indicated to the trial court that he was prepared to go forward with the hearing despite the lack of a ruling from the trial court.

"We have repeatedly held that this court will not consider claimed errors on the part of the trial court unless it appears on the record that the question was distinctly raised at trial and was ruled upon and decided by the court adversely to the appellant's claim." *Keating* v. *Glass Container Corp.*, 197 Conn. 428, 431, 497 A.2d 763 (1985); *Biggs* v. *Warden*, 26 Conn. App. 52, 57, 597 A.2d 839, cert. denied, 221 Conn. 902, 600 A.2d 1029 (1991). A party must "advance his argument of [this issue] at trial in compliance with our rules. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Duntz*, 223 Conn. 207, 237, 613 A.2d 224 (1992).[5] Because the defendant did not request a ruling from the trial court, we decline to review this claim. See *State* v. *Zollo*, 36 Conn. App. 718, 726, 654 A.2d 359, cert. denied, 234 Conn. 906, 660 A.2d 859 (1995).

## III

The defendant next claims that the trial court improperly rendered a deficiency judgment in favor of the plaintiff pursuant to General Statutes § 49-14, when the court adopted the value presented by the defendant's expert witness to establish the value of the foreclosed

---

[5] We also note that we recently decided that article first, § 19, of the Connecticut constitution does not mandate a right to a jury trial in a deficiency proceeding. *Federal Deposit Ins. Corp.* v. *Voll*, supra, 38 Conn. App. 198. If this claim were reviewable, we would be guided by that decision.

property on the day that title vested in the plaintiff. The defendant argues that the plaintiff did not meet its burden of presenting sufficient evidence for the trial court to determine the value of the property, and that the court should have directed a verdict[6] in the defendant's favor. We disagree with the defendant's characterization of the evidence and find the defendant's claim lacking in merit.

The following additional facts are necessary for the resolution of this issue. At the June 24, 1993 deficiency hearing, the plaintiff called Breda as its only witness. Breda testified that on November 3, 1992, he prepared an appraisal of condominium units 201, 203, 204 and 205 at 60 Washington Street, Hamden. Breda further testified that he also prepared an update of that appraisal to establish the property's value as of January 28, 1993, the day title vested in the plaintiff.[7]

Breda testified that he used two methods to ascertain the value of the property as of January 28, 1993. He used the sales comparison approach to value the property at $550,000, and the income approach to value the property at $250,000. Breda concluded that the value of the property was $450,000 as of January 28, 1993. On cross-examination, Breda testified that the 1991 assessed value of the property for tax purposes was $551,600, representing 70 percent of a purported fair market value of $788,000.

Following Breda's testimony and after the plaintiff rested, the defendant moved for a dismissal, claiming

---

[6] While there is no formally established procedure to move for the dismissal of a motion for a deficiency judgment, our Supreme Court recognized in *Eichman* v. *J & J Building Co.*, 216 Conn. 443, 582 A.2d 182 (1990), that the trial court may dismiss such a motion if the plaintiff fails to establish a prima facie case. Although a deficiency proceeding is not a trial, the motion to dismiss a deficiency judgment for a failure to state a prima facie case is akin to, and has the same effect as, a Practice Book § 302 motion for a directed verdict.

[7] The appraisal and the update were both admitted as exhibits.

that the plaintiff had not presented sufficient evidence to establish a prima facie case. The defendant specifically argued to the court that Breda had failed to justify his conclusions. The trial court, in an oral ruling from the bench, denied the defendant's motion. The court ruled that the defendant's argument went to the weight that the court should give Breda's appraisal, not to the sufficiency of the evidence.

The defendant then presented the testimony of Robert J. Nocera, an appraiser. Nocera appraised the property as of January 28, 1993, at $720,000. Following the close of evidence, the court also took judicial notice of an appraisal prepared by Durocher Associates, Inc.,[8] which valued the property for purposes of the November 16, 1992 foreclosure judgment at $633,000. In rendering a deficiency judgment against the defendant, the court accepted Nocera's fair market valuation of the property. In its decision, the court stated that it "sincerely questions the reliability of the conclusions reached by [Breda]. I do not accept [$450,000] as the fair market value as of January 28, 1993."

The defendant now claims that, as a matter of law, where the court had rejected the plaintiff's evidence and accepted, instead, the defendant's evidence that this court should hold that the plaintiff did not meet its burden of proof. For support, the defendant cites our Supreme Court's holding in *Eichman* v. *J & J Build-*

---

[8] The plaintiff had submitted this appraisal in support of its motion for judgment for judgment of strict foreclosure. In *Eichman* v. *J & J Building Co.*, 216 Conn. 443, 457, 582 A.2d 182 (1990), our Supreme Court held it to be error, albeit harmless error, for the trial court to draw inferences from the value placed on the property for the purposes of rendering judgment of strict foreclosure in order to determine the value of the property for the purposes of rendering a deficiency judgment. In this case, however, neither party objected to the trial court's taking judicial notice of the appraisal prepared by Durocher Associates, Inc. Any such error, therefore, is not before this court. *Keating* v. *Glass Container Corp.*, supra, 197 Conn. 428, 431; *Biggs* v. *Warden*, supra, 26 Conn. App. 57.

*ing Co.*, 216 Conn. 443, 582 A.2d 182 (1990). In *Eichman*, the Supreme Court held that "implicit in General Statutes § 49-14 is the requirement that the party seeking a deficiency judgment satisfy [its] burden of proof regarding the fair market value of the property as of the date title vests in [that party]." Id., 445. Furthermore, "[i]mplicit in the purpose of the statute is the initial prerequisite that the plaintiff provide the court with sufficient evidence to demonstrate that she is entitled to a deficiency judgment. Indeed . . . in a deficiency judgment proceeding . . . the trier may not decide an issue which is wholly unsupported by the evidence." (Internal quotation marks omitted.) Id., 450.

It is also clear, however, that "[t]he determination of [a property's] value by a court is the expression of the court's opinion aided ordinarily by the opinions of expert witnesses, and reached by weighing those opinions in light of all the circumstances in evidence bearing upon value and its own general knowledge of the elements going to establish it. . . . [T]he determination of the credibility of expert witnesses and the weight to be accorded their testimony is within the province of the trier of facts, who is privileged to adopt whatever testimony he reasonably believes to be credible." (Citations omitted; internal quotation marks omitted.) Id., 451–52.

In this case, the trial court considered the following four valuations of the property: (1) the 1991 valuation by the town of Hamden in the amount of $788,000; (2) the November 16, 1992 valuation by Durocher in the amount of $633,000; (3) the January 28, 1993 valuation by Breda in the amount of $450,000; and (4) the January 28, 1993 valuation by Nocera in the amount of $720,000. At the close of the plaintiff's evidence, the court had been presented with the 1991 valuation by the town of Hamden in the amount of $788,000 and the January 28, 1993 valuation by Breda in the amount of $450,000. The

defendant then presented Nocera's January 28, 1993 appraisal of $720,000, which the court accepted as the market value of the property on the day that title vested in the plaintiff.

While we note that the trial court questioned the reliability of the conclusions reached by Breda, "[t]his court cannot retry the facts or pass upon the credibility of witnesses." *Holy Trinity Church of God in Christ* v. *Aetna Casualty & Surety Co.*, 214 Conn. 216, 223, 571 A.2d 107 (1990). "As the finder of fact, the trial court had discretion to accept or reject any or all of the testimony of the opposing expert appraisers." *Union Trust Co.* v. *Fordham*, 36 Conn. App. 630, 630–31, 651 A.2d 1350 (1995). The trial court properly exercised its discretion in finding that the value of the property was $720,000. Its decision to do so does not require a conclusion that the plaintiff failed to present a prima facie case.

IV

The defendant next claims that the trial court improperly awarded the plaintiff damages pursuant to a prepayment clause in the mortgage note. The defendant argues that the strict foreclosure of the defendant's interest in the property does not trigger the note's prepayment clause, and that, even if it did, the clause is an unenforceable penalty. We do not reach the defendant's claim, however, because the defendant's appeal on this issue is untimely.

A review of the procedural facts is necessary for disposition of this claim. On July 6, 1992, the defendant was defaulted for failure to disclose a defense.[9] The

---

[9] Practice Book § 236 provides: "In any action to foreclose or discharge any mortgage or lien or to quiet title, or in any action upon any written contract, in which there is an appearance by an attorney for any defendant, the plaintiff may at any time file and serve in accordance with Sec. 120 a written demand that such attorney present to the court, to become a part of the file in such case, a writing signed by him stating whether he has reason to

plaintiff, thereafter, offered into evidence, pursuant to Practice Book § 527,[10] an affidavit of debt, which included a $38,653.69 prepayment fee.[11] On November 16, 1992, the trial court rendered a judgment of strict foreclosure in favor of the plaintiff based on the affidavit of debt. On February 11, 1993, the plaintiff moved for a deficiency judgment against the defendant. On June 24, 1993 and November 7, 1994, a deficiency hearing was held, and on November 7, 1994, the trial court rendered a deficiency judgment of $285,524.10 against the defendant.

The defendant now attempts to appeal the awarding of the prepayment fee. The defendant argues that he reserved his right to appeal by filing a notice of intent to appeal on November 24, 1992, within twenty days of

believe and does believe that there exists a bona fide defense to the plaintiff's action and whether such defense will be made, together with a general statement of the nature or substance of such defense. If the defendant fails to disclose a defense within five days of the filing of such demand, the plaintiff may file a written motion that a default be entered against the defendant by reason of the failure of the defendant to disclose a defense. If no disclosure of defense has been filed, the court may order judgment upon default to be entered for the plaintiff at the time the motion is heard or thereafter, provided that in either event a separate motion for such judgment has been filed. The motions for default and for judgment upon default may be served and filed simultaneously but shall be separate motions."

[10] Practice Book § 527 provides: "In any action to foreclose a mortgage where no defense as to the amount of the mortgage debt is interposed, such debt may be proved by presenting to the court the original note and mortgage, together with the affidavit of the plaintiff or other person familiar with the indebtedness, stating what amount, including interest to the date of the hearing, is due, and that there is no setoff or counterclaim thereto."

[11] The plaintiff's complaint requested, inter alia, "[p]ayment of all sums due and owing." The defendant argues that he could not be expected to disclose his defense to the prepayment penalty fee prior to the plaintiff's filing of an affidavit of debt because the complaint did not provide notice of such a claim. We have stated, however, that "[i]n the absence of a request for a more specific statement the complaint need not detail the elements constituting the mortgage debt." *Burritt Mutual Savings Bank of New Britain* v. *Tucker*, 183 Conn. 369, 375, 439 A.2d 396 (1981).

notice of the strict foreclosure judgment.[12] The defendant specifically stated in his notice of intent to appeal that he intended to challenge the trial court's awarding of the $38,653.69 prepayment fee.[13] The appeal period of a final judgment may be extended either pursuant to Practice Book § 4009 by filing a motion "which, if granted, would render the judgment or decision ineffective," or pursuant to Practice Book § 4040 by filing a motion for an extension of time. *Wilton* v. *McGovern*, 33 Conn. App. 517, 518–19, 636 A.2d 870, cert. denied, 228 Conn. 928, 640 A.2d 116 (1994). Because the defendant did not properly move to extend the appeal period or file an appeal within twenty days of the notice of final judgment, the prepayment fee was no longer appealable. Id.

The defendant claims that he is not challenging his liability on the mortgage debt, but, rather, that he is challenging the trial court's awarding of the prepayment fee when the deficiency judgment was increased by the amount of the fee. This claim, however, is inconsistent with the defendant's assertion that he reserved his right to appeal the prepayment fee by filing a notice of intent to appeal the strict foreclosure judgment. Moreover,

---

[12] Practice Book § 4002 (a) provides that parties may reserve their right to appeal judgments pursuant to subsections (b) and (c) of this rule. Practice Book § 4002 (b) refers to complaints, counterclaims, cross complaints and counts therein that are stricken pursuant to Practice Book § 157; § 4002 (c) refers to complaints, counterclaims, cross complaints and counts therein that are dismissed pursuant to Practice Book § 142 or a summary judgment pursuant to Practice Book § 378. The November 16, 1992 judgment of strict foreclosure does not fall within § 4002 (b) or (c). The defendant, therefore, could not reserve his right to appeal the judgment of strict foreclosure. As we have stated, "due to the nature of foreclosure actions, the spirit of the rules is to expedite matters." *Suffield Bank* v. *Berman*, 25 Conn. App. 369, 373, 594 A.2d 493, cert denied, 220 Conn. 913, 914, 597 A.2d 339, 340 (1991).

[13] The defendant has also not furnished this court with either a signed transcript or a memorandum of decision concerning the judgment of strict foreclosure pursuant to Practice Book § 4061, which provides in pertinent part: "It is the responsibility of the appellant to provide an adequate record for review."

while we have observed that " 'the procedure used to obtain a deficiency judgment [in a foreclosure action] is also part of the main action' "; *Bank of Stamford* v. *Alaimo*, 31 Conn. App. 1, 8, 622 A.2d 1057 (1993), quoting *People's Bank* v. *Bilmor Building Corp.*, 28 Conn. App. 809, 822, 614 A.2d 456 (1992); "[t]he proceedings on a motion for a deficiency judgment . . . do not implicate the integrity of the prior, final judgment of strict foreclosure." *Federal Deposit Ins. Corp.* v. *Retirement Management Group, Inc.*, 31 Conn. App. 80, 86, 623 A.2d 517, cert. denied, 226 Conn. 908, 625 A.2d 1378 (1993).

"Our Supreme Court has held that '[i]n the hearing contemplated under § 49-14 to obtain a deficiency judgment, the court, after hearing the party's appraisers, determines the value of the property and determines any deficiency. This deficiency judgment procedure presumes the amount of the debt as established by the foreclosure judgment and merely provides for a hearing on the value of the property.' " *Vignot* v. *Bank of Mystic*, 32 Conn. App. 309, 313, 628 A.2d 1339 (1993), quoting *First Bank* v. *Simpson*, 199 Conn. 369, 373, 507 A.2d 997 (1986). The defendant's challenge to the prepayment fee amounts to a challenge of the debt and does not fall within the limited nature of the deficiency hearing. *Vignot* v. *Bank of Mystic*, supra, 313. The awarding of the prepayment fee, therefore, cannot be challenged in an appeal from the deficiency judgment.

The trial court entered a judgment of strict foreclosure, including the prepayment fee, on November 16, 1992.[14] On November 21, 1994, the defendant filed this appeal. Practice Book § 4009 provides in pertinent part: "The party appealing shall, within twenty days . . .

---

[14] While it is unclear from the trial court file when notice of the strict foreclosure judgment actually issued, it is reasonable to conclude that notice issued by November 24, 1992, the date on which the defendant filed his notice of intent to appeal.

from the issuance of notice of the rendition of the judgment or decision from which the appeal is taken file an appeal . . . ." The appeal, filed two years after notice of the judgment issued, is untimely.

V

The defendant next claims that the trial court abused its discretion by permitting the plaintiff to return for a "second" deficiency hearing and introduce evidence of real estate taxes and condominium fees after the close of evidence in the "first" deficiency hearing.[15] The defendant argues that the trial court's admission of additional evidence was improper because the plaintiff did not show that its omission of the evidence at the first hearing was by inadvertence or mistake. We conclude that the trial court did not abuse its discretion.

This claim stems from the following additional facts. At the close of the June 24, 1993 deficiency hearing, the trial court found the fair market value of the subject property to be $720,000 as of the date title vested in the plaintiff. Before the court established a deficiency judgment, however, the plaintiff's counsel claimed that the plaintiff was entitled to taxes and condominium fees as outlined in an affidavit that the plaintiff had earlier submitted to the trial court. The defendant's counsel objected, arguing that the plaintiff had failed to present evidence of these charges to the court properly. The court declined to make an evidentiary ruling on the affidavit and adjourned the proceedings. The court stated that it would be "available" at some later time to hear evidence on the taxes and fees if the parties could not reach an agreement.

---

[15] The defendant claims that the plaintiff, in fact, received a second hearing to establish the deficiency in contravention of Practice Book § 528, which provides for "an evidentiary hearing." The trial court, however, never closed the deficiency hearing held on June 24, 1993. Moreover, the trial court did not actually render a deficiency judgment in the case until the conclusion of the second day of evidence, November 7, 1994.

On November 7, 1994, the parties appeared before the trial court to complete the deficiency hearing. The defendant renewed his objection to the presentation of further evidence by the plaintiff. The court, however, took notice of its own statement that it would allow additional evidence if the parties failed to reach an agreement and noted that the additional evidence concerned "collateral issues" to the hearing's primary concern of establishing a fair market value of the subject property as of the date title vested. The plaintiff then presented evidence that the defendant owed $9743.16 in condominium fees and $22,430.65 in real estate taxes to the plaintiff.

"Whether or not a trial court will permit further evidence to be offered after the close of testimony in the case is a matter resting within its discretion. . . . In the ordinary situation where a trial court feels that, *by inadvertence or mistake*, there has been a failure to introduce available evidence upon a material issue in the case of such a nature that in its absence there is a serious danger of a miscarriage of justice, it may properly permit that evidence to be introduced at any time before the case has been decided." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Suffield Bank* v. *Berman*, 228 Conn. 766, 782–83, 639 A.2d 1033 (1994), quoting *State* v. *Holmquist*, 173 Conn. 140, 152, 376 A.2d 1111, cert. denied, 434 U.S. 906, 98 S. Ct. 306, 54 L. Ed. 2d 193 (1977).

Our review of the record reveals that the plaintiff claimed to have filed an affidavit with the court that set forth the fees and taxes, but that the defendant objected to the court's taking notice of the affidavit as evidence. "In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. *DiPalma* v. *Wiesen*, 163 Conn. 293, 298, 303 A.2d 709 [1972]. Reversal is required only where an abuse

of discretion is manifest or where injustice appears to have been done. *State* v. *Brown*, 169 Conn. 692, 702, 364 A.2d 186 [1975]." (Internal quotation marks omitted.) *Suffield Bank* v. *Berman*, supra, 228 Conn. 783, quoting *State* v. *Holmquist*, supra, 173 Conn. 152–53. The court did not rule on the admissibility of the offered affidavit at the June 24, 1993 hearing. It is reasonable to conclude that the trial court believed, in light of the available evidence, that the parties could reach an agreement among themselves, and that if the parties did not reach an agreement no injustice would be done by continuing the hearing on a future date. We conclude, therefore, that the trial court did not abuse its discretion.

## VI

The defendant's final claim is that the trial court improperly admitted into evidence microfiche copies of checks offered by the plaintiff. The defendant argues that the copies did not satisfy the best evidence rule or qualify as business records pursuant to General Statutes § 52-180.[16] We find no merit to the defendant's claim.

[16] General Statutes § 52-180 provides in pertinent part: "Admissibility of business entries and photographic copies. (a) Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter. . . . .

"(c) Except as provided in chapter 3, if any person in the regular course of business has kept or recorded any memorandum, writing, entry, print, representation or combination thereof, of any act, transaction, occurrence or event, and in the regular course of business has caused any or all of them to be recorded, copied or reproduced by any photographic, photostatic, microfilm, microcard, miniature photographic or other process which accurately reproduces or forms a durable medium for so reproducing the original, the original may be destroyed in the regular course of business unless its preservation is otherwise required by statute. The reproduction, when satisfactorily identified, shall be as admissible in evidence as the original in any judicial or administrative proceeding, whether the original is in existence or not, and an enlargement or facsimile of the reproduction shall be

"Section 52-180 should be liberally construed, and review is limited to determining whether the trial court abused its discretion in admitting a document under that section." *State* v. *Lawler*, 30 Conn. App. 827, 832, 622 A.2d 1040 (1993). "Pursuant to General Statutes § 52-180 (c), reproductions of business records are admissible as originals if the conditions set forth in General Statutes § 52-180 (a) are satisfied. *Burkert* v. *Petrol Plus of Naugatuck, Inc.*, 5 Conn. App. 296, 299, 497 A.2d 1027 (1985); C. Tait & J. LaPlante, Connecticut Evidence § 10.10. 'A copy of a business record is admissible under the statute if (1) the copy was made in the ordinary course of business and (2) the copy accurately reproduced the original on a durable medium.' *State* v. *Crumble*, 24 Conn. App. 57, 69, 585 A.2d 1245, cert. denied, 218 Conn. 902, 588 A.2d 1077 (1991)." *State* v. *Pearl*, 28 Conn. App. 521, 534, 613 A.2d 304 (1992).

The evidence claimed by the defendant to have been erroneously admitted consisted of microfiche copies of checks showing the real estate taxes and condominium fees that the plaintiff paid on the foreclosed property. Christopher Ursini, a commercial loan officer for the plaintiff, testified that he was the officer responsible for handling the loan on the property involved in this case, and that he arranged to have the checks processed. The checks would have been dated at the time that they were prepared by an employee of the plaintiff. Ursini further testified that after the checks are cashed they are returned to the bank and microfilmed, and the originals are placed in storage. We conclude that the trial court properly allowed the microfiche copies of the checks in evidence.

The judgment is affirmed.

In this opinion the other judges concurred.

---

likewise admissible in evidence if the original reproduction is in existence and available for inspection under direction of court. The introduction of a reproduced record, enlargement or facsimile shall not preclude admission of the original."